IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-02580-WDM-BNB

VINCENT MACIEYOVSKI,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER,

    Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the Motion for Summary Judgment (doc no 45) filed by Defendant City and County of Denver (the "City") and the Motion for Partial Summary Judgment (doc no 49) filed by Plaintiff. Both motions are opposed. Upon review of the parties' filings, I conclude oral argument is not required. For the reasons that follow, the City's motion will be granted and Plaintiff's motion will be denied.

### Background[1]

This is an employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, as amended, Title I of the Civil Rights Act of 1991. Plaintiff immigrated from Poland to the United States; he became a United States citizen around 1988 or 1989. He was hired by the City in 2003 and was employed during the relevant time period as a Master Trades Worker. His primary responsibility was maintenance and

---

[1] The facts are drawn from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

repair of mechanical equipment and control systems. In March 2005, the City posted a job announcement for a Facilities Superintendent position. The job notice set forth as requirements "graduation from high school or possession of a GED Certificate plus eighteen semester hours of directly related management course work from an accredited college or university which must have included management, personnel, performance evaluation, and business communication and report writing and three years of supervisory skilled trades experience in the maintenance, repair and construction of buildings and facilities." Exh. A-4 to Motion for S.J. (doc no 46-5). The notice went on to state that the "ideal candidate" would have a degree in "Engineering, Architecture, Public Administration, Business or a closely related field and over five years of supervisory experience in building facilities . . . ." *Id.*

Plaintiff applied for the supervisory position. He and sixteen other applicants were deemed by the Career Service Authority to meet the minimum qualifications for the position. As part of the application process, the candidates completed responses to six "core competency" questions, which were evaluated and graded up to a maximum of ten points per answer. The reviewer of the core competency questions saw only the last four digits of the applicant's social security number, not the applicant's name, during this process. Plaintiff's online application/resume listed his employment history from 1992 to 2004, identifying his employers and job titles (Facility Engineer, Engineering Manager, Operation Engineer, and Master Trade). Ex. A-12 to Motion for S.J. at 1-2 (doc no 46-13). His descriptions for his current and previous jobs emphasized his technical and engineering experience and made only one reference to supervisory experience ("Supervise a diverse crew of people."). *Id.* at 2. Plaintiff's application also

showed that he had a B.S. in Business Administration and M.B.A. in Finance and that he had the following licenses and certifications: ASE Refrigerant Recovery, Journey Refrigeration, and Journey Stationary Engineer. *Id.* at 3.

Applicants were rated based on their responses to the core competency questions, accounting for approximately 60% of the total rating, as well as on their written application information (assessing "qualifications," "experience level," "communication," and "knowledge") (40% of overall rating). The five applicants with the highest ratings were selected for interviews. Plaintiff was not among the final interviewees.

Plaintiff was directly supervised by a maintenance supervisor, who in turn reported to Candace Lothian, the Facilities Manager. Lothian was the person who hired Plaintiff in 2003. Lothian reported to Dan Barbee, who was the Director of Public Office Buildings at the time. Barbee's responsibilities involved managing the operations and maintenance of 154 city-owned facilities. Barbee was the ultimate decisionmaker for hiring and disciplinary decisions. At some point during the hiring process, Lothian reviewed and rated some of the resumes submitted for the Facilities Superintendent position to ensure that the applicants had some facilities experience, including Plaintiff's resume. This was apparently early in the review process and was her only involvement in the hiring decision. Barbee scored the core competency responses, conducted the interviews with the five finalists, and made the decision to hire Kevin O'Neil as Facilities Superintendent. O'Neil's resume showed job descriptions from 1975 to 2004, including the following job titles: Revenue Manager, Director of Property Management, Sales Representative, Director of Administrative Services, and Purchasing. Exh. A-15 to

3

Motion for S.J. (doc no 46-16) at 1-2. The job descriptions showed that O'Neil had been in management and director level positions since 1987, including significant responsibility over budgets, business units, and facilities. *Id.* He had a bachelor's degree in political science. *Id.*

When asked in his deposition why Plaintiff did not get the position, Barbee testified that Plaintiff did not appear to possess the supervisory skills needed but rather had more maintenance and engineering experience. In addition, Barbee believed that O'Neil's responses to the core competency questions indicated that O'Neil was the best applicant for the position.

Plaintiff alleges that after he learned he did not receive the job, he spoke to Lothian about it and that she raised the possibility that perhaps he had done poorly in the interview because his "English wasn't up to par." Exh. 23 to Response (doc no 56-24) at 70. He asserts that she has also encouraged him to "practice." *Id.* at 72. Lothian denies disparaging Plaintiff's language or accent but states that she has made suggestions that Plaintiff try to improve his writing skills. Exh. 24 to Response (doc no 56-25) at 30.

At the time that Plaintiff applied for the Facilities Superintendent position, he was assigned to the Denver Art Museum, considered to be a "customer" of Plaintiff's department. However, after disputes and issues with museum management over his job responsibilities and performance, the museum requested that he be removed from this position. Lothian transferred Plaintiff to another assignment effective July 17, 2006. Among other problems, Plaintiff had on three separate occasions altered environmental systems controls at the museum he had been told not to adjust. Plaintiff job title did not

change and he suffered no loss of pay or benefits.

Plaintiff was also involved in an automobile accident while driving a City vehicle on March 7, 2006. Although this type of infraction usually warrants a verbal reprimand, Plaintiff was given a written reprimand because he did not have his driver's license with him at the time of the accident and was uncooperative with the police officer, according to the police report.

After exhausting his administrative remedies, Plaintiff filed this lawsuit. According to his Amended Complaint, he asserts the following claims: (1) employment discrimination - disparate treatment, in violation of Title VII; and (2) retaliation in violation of Title VII.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence. In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick,* 220 F.3d at 1226. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Id.* at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000). The plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy or credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005); *see also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

The burden shifting approach also applies to a claim of retaliation. To establish a

*prima facie* claim under Title VII for retaliation, a plaintiff must establish three elements: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, ---U.S. ----, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

Discussion

The City moves for summary judgment on the discrimination claim on the grounds that Plaintiff cannot show that Barbee's non-discriminatory reasons for hiring O'Neil instead of Plaintiff were pretextual.[2] In addition, to the extent that Plaintiff is asserting a separate claim of "pattern and practice" discrimination, based on his unsuccessful applications for other promotional positions with the City, Plaintiff's claim must fail because he has not exhausted his administrative remedies and cannot individually assert a pattern/practice claim. Defendant also argues that if Plaintiff is asserting a hostile work environment claim, it must also fail both from the failure to exhaust remedies and on the merits. Finally, Defendant contends that summary judgment must enter against Plaintiff on the retaliation claim because Plaintiff failed to exhaust his administrative remedies, cannot show any adverse action, cannot show any causal connection between any alleged adverse action and his protected activity, and

---

[2]Plaintiff's Motion for Partial Summary Judgment seeks summary judgment on essentially the same issue. Plaintiff argues that the City has not met its burden to produce evidence of a legitimate, non-discriminatory reason for failing to promote Plaintiff. As discussed further below, I conclude that the City has satisfied its burden.

cannot show that the reasons for any alleged adverse action were pretextual. I will address each argument in turn.

1. Discrimination

    A. Failure to Promote

Plaintiff argues that the burden-shifting approach of *McDonnell-Douglas* does not apply here because he has proffered "direct evidence" of discrimination. Plaintiff relies on the following exchange in Barbee's deposition to make the assertion that Barbee intentionally discriminated against Plaintiff:

> Q: Is it fair to say you are familiar with Mr. Macieyovski's work and his abilities?
> A: Oh, yes.
> Q: Were you ever of the opinion that Mr. Macieyovski's abilities were such that regardless of how he had scored on the core competency questions, that he would have made a superior candidate for the position that you filled with Mr. O'Neil?
> A: No.
> Q: Why not?
> A: He's a maintenance person. He does a great job at maintenance, but that does not make him a great manager.

Exh. 26 to Response (doc no 56-27) at 96.

In this exchange, Barbee does no more than express his opinion that he does not believe that Plaintiff is a superior manager than O'Neil. This is not direct evidence of discrimination, particularly since it shows no discriminatory animus and reveals nothing about Barbee's decision-making in 2005. Accordingly, I will apply the burden-shifting framework.

The City concedes that Plaintiff can meet his prima facie burden. However, the

8

City has presented evidence that there was a legitimate, non-discriminatory reason for selecting a person outside of Plaintiff's protected class for the position. Specifically, the City contends that the blind rating of responses to the core competency questions combined with the assessment of the various candidates' resumes and the personal interviews, legitimately lead to the selection of person honestly believed to be more qualified than Plaintiff for the position. Accordingly, I agree that the City has satisfied its burden of production in this regard.

Plaintiff has the ultimate burden of presenting disputed and undisputed facts that, if credited by the fact-finder, would carry his ultimate burden of persuasion to show that the City's proffered reason was a pretext for unlawful discrimination. I conclude that Plaintiff cannot do so.

Plaintiff first argues that pretext is shown because his qualifications "were substantially better than at least two other candidates in the interview pool and the person ultimately hired, . . . when compared to the specific requirements of the announcement." Response at 9. However, my review of the evidence does not indicate that Plaintiff was demonstrably better qualified for the position than the final interviewees or O'Neil.

It is well-established in this circuit that ""[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation marks and alteration omitted); *see also Kendrick*, 220 F.3d at 1231 ("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate

plaintiff."). Thus, even if the stated reasons later prove to be untrue, I must examine whether the employer believed those reasons and made a good faith decision. "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Comp.,* 468 F.3d 1243, 1250 (10th Cir. 2006) (citations omitted).

Therefore, I must examine the qualifications of the candidates as they appeared to Barbee at the time the decision was made. First, Plaintiff offers nothing to demonstrate that his scores on the core competency questions were or should have been higher than O'Neil's. This is significant since 60% of the rating came from these questions. Moreover, although Plaintiff now asserts in his response brief and attached exhibits that he has extensive supervisory experience, this was not apparent from the resume he submitted to the City. O'Neil's resume, by contrast, showed many years of significant supervisory and facilities management experience and his responses to the core competency questions appear to be clear, coherent, and on-point.

Plaintiff's primary concern appears to be that he had more education than O'Neil, that O'Neil did not meet the minimum qualifications, and that O'Neil's qualifications did not exactly match those of an "ideal" candidate. However, it appears that Barbee valued supervisory and management experience over technical experience and education for this position; this is precisely the type of business judgment that courts are not to second-guess. In addition, as to whether O'Neil met the minimum qualifications, the evidence shows that the Career Service Authority made this determination for the initial screening, not Barbee, and there is nothing to indicate that this was a

discriminatory decision.  Finally, the "ideal candidate" description appears to be quite flexible and does not set forth requirements, but rather preferred qualities, many of which O'Neil appears to possess, such as experience in facilities management.  I note also that Plaintiff concedes that at least two of the other finalists had qualifications at least as good as his but also were not selected for the position.  In other words, at least two other people, presumably not in Plaintiff's protected class, were similarly situated to Plaintiff and were also passed over for the job.  A plaintiff "can not pick and choose a person [he] perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [he]." *English v. Colo. Dept. of Corrections,* 248 F.3d 1002, 1012 (10th Cir. 2001) (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 646-47 (3rd Cir.1998)).  Plaintiff, therefore, cannot demonstrate pretext by insisting that he was patently more qualified than the person ultimately selected, because he was not.[3]

Plaintiff's second argument of pretext appears to be that Barbee was influenced by Lothian to not interview Plaintiff because Lothian "had a bias as to Plaintiff's English and his ability to interview."  Response at 10.  Plaintiff contends that this was hidden by the use of unreliable "subjective" criteria.  *Id.* at 11.  The facts, even viewed in the light most favorable to Plaintiff, would not permit a reasonable fact finder to make this inference.  First, there is simply no evidence that Lothian had any involvement in the

---

[3]This distinguishes Plaintiff's case from *Mohammed v. Callaway*, 698 F.2d 395 (10th Cir. 1983), which was cited by Plaintiff.  In *Mohammed*, there were only two candidates for a position, the plaintiff and another individual.  The minimum qualifications for the job were significantly more stringent than the one at issue here and the plaintiff's qualifications were "objectively superior" to other candidate.  698 F.2d at 401.

11

hiring process other than reviewing the resumes for experience in facilities or that she ever gave Barbee negative information about Plaintiff's ability to be a manager. Moreover, the scoring on the core competency questions, which constituted a significant part of the selection criteria, was blind. Plaintiff appears to argue that Barbee could have discovered Plaintiff's identity in the review process by finding Plaintiff's social security number and then comparing it to the sheets he was scoring; however, this is pure speculation and not evidence that Barbee did so. *Bones v. Honeywell Intern.*, *Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (citations omitted). Finally, as noted above, the resumes, as they were submitted to Barbee, appeared to show numerous legitimate and quantifiable differences between Plaintiff's qualifications and those of the finalists selected, including years of supervisory management experience.

The biggest obstacle to Plaintiff's theory, however, is that there is a strong presumption that Lothian did not harbor discriminatory animus against Plaintiff, since she in fact hired Plaintiff. This entitles the City to a "same actor" inference. *See Antonio,* 458 F.3d at 1183 (where employee was hired and fired by the same actor within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual).[4] Plaintiff's evidence is simply not sufficient to overcome this inference. At most, Plaintiff's evidence is that, when speculating on why Plaintiff did not get the job, Lothian suggested it could have been his

---

[4]There is significant additional evidence on the record that Lothian liked Plaintiff and respected his skills and experience. Moreover, her emails to him do not indicate that she believed he had trouble with communication, and indeed she so testified in her deposition.

12

interview (which, of course, he did not have) and that she has suggested he work on his writing skills.[5] This does not suggest that she believed or communicated to anyone that Plaintiff was not qualified for management because of his language skills and, by extension, because of his national origin.

Plaintiff also appears to assert that pretext is shown because he previously applied for and was denied approximately 14 other positions with the City. He argues that this "pattern and practice" of failing to promote him is circumstantial evidence of pretext. However, Plaintiff's evidence in this regard does not raise any issues of fact regarding pretext. In his deposition, he admits that he has no evidence about the decisionmakers for these other jobs (and indeed does not know who most of them were), has no evidence about the qualifications of the individuals who were ultimately selected and how they compared to him (he concedes he was not even minimally qualified for some of these positions), and admits that he has no evidence that his national origin played any role in the failure to be selected for these other positions. Accordingly, the mere fact that Plaintiff previously applied for but did not receive other jobs does not demonstrate pretext in this specific situation.

B. Hostile Work Environment

Plaintiff also alleges in his Amended Complaint facts implying a discrimination claim based on a hostile work environment. I agree with the City that this claim fails

---

[5]Unfortunately, experience tells me that poor writing skill is not unusual regardless of national origin. Plaintiff's Response contains more than 30 spelling errors or typographical errors, numerous missing articles, three sentence fragments, and numerous incorrect case citations. Although I have no idea of counsel's national origin, I do suggest that he take more care with his writing and proofreading.

13

because Plaintiff has not exhausted his administrative remedies. Moreover, even if the claim were properly exhausted it would fail as a matter of law because the facts he alleges are of only a few stray remarks and are not sufficient to demonstrate a hostile work environment.

An employee may not assert a claim under Title VII claim based on conduct not first asserted in a discrimination charge filed with the EEOC or other proper administrative agency. *Holmes v. Utah, Dept. of Workforce Services*, 483 F.3d 1057, 1070 (10th Cir. 2007). The Supreme Court has made clear that each discrete incident of discriminatory or retaliatory conduct constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). I must therefore examine Plaintiff's charge of discrimination to determine whether it alleges facts that could support a hostile work environment claim. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) ("A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.").

Plaintiff proffers a letter to the EEOC dated November 26, 2005. Exh. 10 to Response (doc no 56-11). The letter discusses only the Facilities Superintendent position and Plaintiff's contention that he was more qualified than O'Neil. Similarly, the charge of discrimination, dated November 28, 2005, addresses only the failure to hire Plaintiff for the Facilities Superintendent position despite Plaintiff's belief that he was more qualified. Exh. 18 to Response (doc no 56-19). Because Plaintiff has not exhausted his administrative remedies in this regard, he cannot assert a claim of

discrimination based on a hostile work environment.

2.  Retaliation

I agree with the City that Plaintiff's retaliation claim also fails. Again, Plaintiff failed to exhaust his administrative remedies in this regard. Even if the claim were properly exhausted, it would also fail on the merits. There is no dispute that Plaintiff engaged in protected activity by filing his EEOC charge of discrimination in November 2005. However, Plaintiff has not offered evidence sufficient to create an issue of fact regarding any adverse action suffered as a consequence of that charge.

First, I agree with Defendant that Plaintiff's charge of discrimination does not include any facts alleging retaliatory conduct by the City. Plaintiff argues, however, that he "notified" the EEOC of facts relevant to retaliation. Response at 15. Plaintiff appears to be referring to a letter to the EEOC dated April 12, 2006, which does describe actions that Plaintiff contends were retaliatory, including curtailing his job responsibilities and giving him a reprimand for the car accident. Exh. 7 to Response (doc no 56-8). However, Plaintiff has offered no legal authority to support his view that the letter, if indeed it was sent, could constitute a new charge of discrimination. Pursuant to EEOC regulations, a charge may be amended by "written statements" of fact, but only insofar as they "clarify and amplify allegations made" in the original charge or "alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). Retaliation is a separate theory of recovery and the claim is based on new facts; accordingly, I conclude that it requires a new and separate charge of discrimination filed with the EEOC. *Morgan*, 536 U.S. at 114 ("Each incident of discrimination and each retaliatory

15

adverse employment decision constitutes a separate actionable 'unlawful employment practice.'")  The letter does not satisfy Plaintiff's burden in this regard, as it is unsigned and unsworn.

Even if Plaintiff had properly exhausted his remedies by sending this letter, I conclude that his claim would still fail.  As part of his *prima facie* case, Plaintiff must establish that he suffered a material adverse employment action, defined as an injury or harm that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* 126 S. Ct. at 2415.  The particular circumstances surrounding the act should be considered in determining the impact of an employer's act.  *Id.*  The materiality of a claimed adverse action is to be determined objectively; "petty slights, minor annoyances, and simple lack of good manners" will not deter a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern,* 126 S.Ct. at 2415.

Moreover, unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the employee must offer additional evidence to establish causation in order to prove a *prima facie* claim of Title VII retaliation.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1182 (10th Cir. 2006); *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)  (three month interval between protected activity and adverse action, standing alone, is insufficient to show causation).

Here, the only adverse actions alleged in Plaintiff's letter are that his job responsibilities at the museum had been curtailed and that no action was taken to remedy the situation, despite his complaint to his supervisor (Lothian).  He also alleges that he was reprimanded as a result of the car accident and he felt the punishment was

too severe.

With respect to the changes in job responsibilities, Plaintiff's communications to his employer (doc no 56-9) indicate that he simply had a professional dispute about how the facilities should be run and disliked how job responsibilities had been divided between Plaintiff and a museum employee. This is not a material adverse action, as there is no effect on Plaintiff's job title, salary or other benefits, but rather seems to fall into the category of "petty slights." Moreover, the undisputed evidence is that museum personnel decided they wanted Plaintiff to have a more limited role at the museum than he was accustomed to having at other facilities and that this preceded his protected activity. There is no evidence that anyone at the museum was aware of Plaintiff's charge of discrimination, which means that the curtailment of Plaintiff's job responsibilities was not causally related to his protected activity. Similarly, Lothian's failure to remedy the situation to Plaintiff's liking is not retaliatory, as the circumstances were not materially adverse. Moreover, again, there is no evidence that Lothian was aware of the charge of discrimination.[6]

I also conclude that the reprimand was not an adverse action. This was essentially a single letter of warning and there is no evidence that it put Plaintiff's employment or benefits at serious risk. *Cf.*, *Roberts v. Roadway Express, Inc.*, 149

---

[6] Lothian testified that she was not aware of the charge of discrimination during this time. Plaintiff contends that since the City, as an organization, had notice of the charge that this creates an issue of fact about whether Lothian knew. The fact that someone in a large organization (presumably the legal department or City Attorney's Office) had received notice of Plaintiff's charge does not mean that every employee has actual knowledge of it. Plaintiff's burden is to produce evidence, not speculation, regarding Lothian's knowledge and I conclude that he has failed to show the existence of a genuine factual issue in this regard.

F.3d 1098, 1104 (10th Cir. 1998). Moreover, the warning letter was given over three months after Plaintiff filed his charge of discrimination and Plaintiff must therefore offer some additional evidence to demonstrate a causal connection between the warning letter and his protected activity. Plaintiff has not done so. Plaintiff contends that causation (or pretext) is shown because usually employees involved in similar accidents are given verbal, not written warnings. Response at 18. Again, however, I look at facts as they appeared to the decisionmaker at the time. Plaintiff does not dispute that he was in a car accident during working hours, that he was operating the vehicle without his license with him, and that the police officer stated Plaintiff had been uncooperative. These are factors that could reasonably justify the marginally more harsh discipline that Plaintiff received and do not indicate that Barbee's decision was not honestly made for good faith non-retaliatory reasons. *See Rivera v. City and County of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (misconduct of other employees could reasonably be viewed as less serious than the plaintiff's dishonesty).

The remaining acts allegedly constituting adverse action (transferring Plaintiff from his job at the museum to another facility and giving him a poor performance review) occurred after Plaintiff's April 2006 letter and so cannot even arguably be considered exhausted. Because no acts subject to a timely administrative charge are materially adverse or causally related to Plaintiff's protected activity, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

Accordingly, it is ordered:

1. The Motion for Summary Judgment (doc no 45) filed by Defendant City and County of Denver is granted.

18

2. Plaintiff's Motion for Partial Summary Judgment (doc no 49) is denied.

3. Summary judgment shall enter in favor of Defendant and against Plaintiff on all claims and this case shall be dismissed.

4. Defendant may have its costs.

DATED at Denver, Colorado, on June 26, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge